IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Danny Freeman | : | |
| | : | Case No. C-1-04-781 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING MOTION TO |
| The Cincinnati Gas & Electric Company | : | DISMISS AND DENYING AS MOOT |
| | : | MOTION TO CONSOLIDATE |
| Defendant | : | |

This matter comes before the Court on Defendant The Cincinnati Gas & Electric Company's Motion to Dismiss Plaintiff's Complaint (doc. #9) and on Plaintiff's Motion to Consolidate with Case No. C-1-05-179 (doc. #14). For the reasons that follow, the Court **GRANTS WITHOUT PREJUDICE** the Motion to Dismiss and **DENIES AS MOOT** the Motion to Consolidate.

**I.    BACKGROUND**

Plaintiff Danny Freeman initiated this suit against Defendant The Cincinnati Gas & Electric Company ("CG&E") on November 17, 2004. Freeman alleges that CG&E, through its operations at the William H. Zimmer Generating Station ("Zimmer Station"), an electric utility plant located in Clermont County, Ohio, violates the Clean Air Act, 42 U.S.C. § 7401 *et seq.* ("CAA"), a Proposed Title V Permit issued by the Ohio EPA, and Ohio's air pollution laws, and that the emissions from the Zimmer Station constitute a nuisance and trespass under Ohio law. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 based solely on the federal question raised in the Complaint by the CAA claim.

CG&E moved to dismiss this action on December 23, 2004 pursuant to Rule 12(b) of the

1

Federal Rules of Civil Procedure.  CG&E contends that the Complaint fails to lay a foundation for a citizen suit under the CAA.  Specifically, CG&E contends, in part, that Freeman has failed to comply with the notice requirements that are a prerequisite for filing a citizen suit under the CAA, 42 U.S.C. § 7604(b), and that this Court lacks subject matter jurisdiction over the action due to this failure.

Freeman opposes the Motion to Dismiss on the merits.  It is undisputed that on July 27, 2004 Freeman sent CG&E, along with various state and federal officials, a notice letter ("the First Notice Letter") purporting to identify alleged violations of the CAA occurring at the Zimmer Station.  (Doc. #9, ex. A.)  Freeman asserts that the First Notice Letter complied with the notice requirements of 42 U.S.C. § 7604(b) and that he properly waited for more than 60 days after sending the First Notice Letter to initiate this suit on November 17, 2004.

After CG&E filed the Motion to Dismiss, Freeman sent a second notice letter on January 13, 2005 ("the Second Notice Letter") to CG&E concerning alleged violations of the CAA at the Zimmer Station occurring both before and after the July 27, 2004 date of the First Notice Letter. (Doc. #16, ex. A.)  More than sixty days after the date of the Second Notice letter, on March 18, 2005, Freeman initiated a second lawsuit against CG&E in the United States District Court for the Southern District of Ohio, case no. C-1-05-179, currently pending before the Honorable Judge Michael H. Watson.

Also on March 18, 2005, Freeman moved to consolidate his pending suits against CG&E. (Doc. #14.)  CG&E opposes the consolidation of the first and second lawsuits arguing that it is unnecessary because the instant lawsuit should be dismissed.

## II.     ANALYSIS

### A.     Motion to Dismiss

Freeman moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss this action for lack of subject matter jurisdiction. The Court may consider matters outside the pleadings, such as the First Notice Letter and the Second Notice Letter, on a Rule 12(b)(1) motion. See Sierra Club Ohio Chpt. v. City of Columbus, 282 F. Supp. 2d 756, 761 n. 6, 773-74 (S.D. Ohio 2003); Frilling v. Honda of Amer. Mfct., Inc., No. C-3-96-181, 1996 U.S. Dist. Lexis 22526, at *6 (S.D. Ohio Oct. 21, 1996).

A citizen suit against an alleged violator under the CAA, such as the one here by Freeman against CG&E, may not be filed until the plaintiff has complied with the statute's notice provision: "No action may be commenced . . . (A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . . ." 42 U.S.C. § 7604(b). The applicable EPA regulation further specifies what must be contained in the notice:

> (b) Violation of standard, limitation or order. Notices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation, *shall include sufficient information to permit the recipient to identify* the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, *the date or dates of such violation*, and the full name and address of the person giving the notice.

40 C.F.R. § 54.3 (emphasis added). The notice requirement serves two functions both designed to obviate the need to file a citizen suit: (1) it gives government agencies an opportunity to take over enforcement of environmental regulations, and (2) it gives the violator an opportunity to remedy the violations. See Hallstrom v. Tillamook Cty., 493 U.S. 20, 29 (1989) (regarding a

similar notice requirement in the Resource Conservation and Recovery Act).

CG&E's primary contention is that the First Notice Letter dated July 27, 2004 failed to specify the "date or dates of such violations" as required by the notice regulation. "Strict compliance with the statutory notice requirements is a mandatory jurisdictional prerequisite to maintaining suit under the CAA and similar environmental laws." National Parks Conservation Ass'n, Inc. v. TVA, 175 F. Supp. 2d 1071, 1077 (E.D. Tenn. 2001) ("National Parks"). A court may not excuse a plaintiff's failure to comply with the notice requirement. See Ellis v. Gallatin Steel Co., 390 F.3d 461, 475 (6th Cir. 2004). Instead, the court must dismiss the action for lack of subject matter jurisdiction. See National Parks, 175 F. Supp. 2d at 1073.

Before analyzing the First Notice Letter, it is useful to examine what other courts have required to satisfy the "date or dates" notice requirement. In a seminal case in the Southern District of Ohio, the Honorable Judge Walter H. Rice was called on to interpret an almost identical notice regulation pertaining to the Clean Water Act ("CWA"). See Frilling, 1996 U.S. Dist. Lexis 22526, at *8. Judge Rice held that a plaintiff must strictly comply with the CWA's provisions prior to bringing suit. See id. at *8-9 (citing Hallstrom). In regards to the notice requirement to identify the date or dates of the violation, Judge Rice held that the plaintiffs' reference in their notice letter to a specific number of times that a particular type of violation occurred over a five-year period was insufficient. See id. at *22. "[S]uch references do not even assist the Defendant in identifying the specific year or years of the alleged violations." Id.

Likewise, he held that statements in the notice letter that another type of violation occurred on a "nearly daily" basis and others on a "continuous" basis or on an "intermittent" basis also were insufficient. Id. at *21, 24-25. Regarding the terms "nearly daily" and

"continuous," Judge Rice stated that "[a]lthough both of these terms suggest that, on any given day, it is more likely than not that an alleged violation will have occurred, there is nevertheless considerable ambiguity as to the degree of said likelihood." Id. Judge Rice concluded that these labels did not identify the specific date or dates, or even the number of dates, on which the violations occurred. See id. at *24-25. In another Sixth Circuit case, a district court held that a notice letter which stated only that the defendant "regularly violated" an environmental standard "for at least the past five years" was insufficient. See National Parks, 175 F. Supp. 2d at 1077.

On the other hand, the District Court for the District of Columbia, held that a notice letter that stated that the defendant "has and continues to violate" its permit was sufficient. See American Canoe Ass'n, Inc. v. District of Columbia Water and Sewer Auth., 306 F. Supp. 2d 30, 35 (D.D.C. 2004). "References to ongoing violations is sufficiently specific notice." Id.; but see Sierra Club Ohio Chpt., 282 F. Supp. 2d at 773-74 (stating that notice letter that states that the defendant violated and continues to violate a standard does not sufficiently specify the date of the violation). The American Canoe court distinguished National Parks on the grounds that its case involved an ongoing failure to adopt preventative measures, while the plaintiff in National Parks alleged "discrete, past emissions violations" where "dates were critical to determining whether [CAA] violations had occurred at all." Id. at *36. Nonetheless, it is difficult to reconcile the holding in American Canoe with Judge Rice's decision in Frilling that notice of "continuous" violations is not sufficient to identify the date or dates of violations. Also, it is unclear to this Court how the defendant in American Canoe could have determined when the violations began based on the ambiguous statement that the defendant "has and continues to violate" its permit.

5

Another district court stated that although "a plaintiff does not have to list the precise date for each and every alleged violation[,]" the plaintiff "cannot simply allege that violations occurred within a broad period of time with no additional information." See Friends of Frederick Seig Grove #94 v. Sonoma Cty. Water Agency, 124 F. Supp. 2d 1161, 1168 (N.D. Cal. 2000). The notice must be sufficient so that the defendant itself can identify the dates of the violations. See id. Applying that standard, the court ruled a notice letter was sufficient when the letter indicated that the plaintiff had determined that 326 violations had occurred based on self-monitoring information the defendant itself had submitted to an oversight agency. See id. at 1164, 1169.

Turning back to the facts here, Freeman acknowledges that the First Notice Letter does not identify a laundry list of dates that the alleged violations at the Zimmer Station occurred. Instead, he points to the following language in the First Notice Letter and states its provides sufficient information for CG&E to have identified the dates:

> [CG&E's] alleged violations in Clermont County, Ohio, began at some point after the date operations began at the Zimmer facility. In the past couple of years, the alleged violations have worsened, or became less tolerable. New plant operations have created further and additional violations. . . . [CG&E's] violations of the Clean Air Act are ongoing in nature and will continue in the future unless and until abated.
> \* \* \* \*
>
> [CG&E's] Operations have violated and, upon information and belief, will continue to violate the federal Clean Air Act . . . .
>
> \* \* \* \*
>
> The Residents believe that these environmental violations are ongoing, continuing, and/or capable of being repeated in the future at the facility.

(Doc. #9, ex. A, First Notice Letter, at p.2.)

Freeman asserts that the First Notice Letter read as a whole implies that the violations are "ongoing" and thus they have occurred every day since the Zimmer Station opened operation. Freeman states that the date of the First Notice Letter, July 27, 2004, is necessarily the last date the violations are alleged to have occurred for purposes of this lawsuit. Further, because the CAA has a five-year statute of limitations, he suggests that the first relevant date a violation occurred is July 27, 1999. He concludes the First Notice Letter can be read to give notice that the daily, ongoing violations occurred between July 27, 1999 and July 27, 2004 at the Zimmer Station.

The Court finds that the First Notice Letter was not sufficient to enable CG&E to identify the date or dates the alleged violations occurred. First, the Court cannot agree that the statements that the violations are "ongoing" or "continuing" are synonymous with a statement that the violations occurred daily. For example, an event that predictably occurs once a week or once a month as the result of a regularly scheduled event at the Zimmer Station could also be characterized as being "ongoing" or "continuing." Moreover, the Court finds that the terms "ongoing" and "continuing" in the context of the First Notice Letter are indistinguishable from the notice of "continuous" violations found to be insufficient in Frilling. See Frilling, 1996 U.S. Dist. Lexis 22526, at *21, 24-25. In fact, when the First Notice Letter states that violations are "ongoing, continuing and/or capable of being repeated[,]" the phrase "capable of being repeated" raises the possibility that the violations will not occur and thus do not occur daily.

Likewise, the allegation in the First Notice Letter that the violations had worsened in "the past couple of years" does not fairly imply that the violations occurred daily for an exact two-year period from July 27, 2002 to July 27, 2004. The vague term "worsened" is defined in the

7

First Notice Letter as "became less tolerable." (Doc. #9, ex. A, First Notice Letter, at p.2.) This could be interpreted to signal a greater frequency of violations, a greater severity of violations, or both. If the letter was intended to mean that the violations increased in frequency in the "past couple of years," that might undercut the argument that violations had occurred on a daily basis prior to July 27, 2002.

Additionally, the credibility of Freeman's argument is undercut by portions of the Second Notice Letter he sent on January 13, 2005. In the Second Notice Letter, Freeman identifies approximately seventy specific dates between July 27, 1999 and July 24, 2004 on which at least some of the violations allegedly occurred. (Doc. #16, ex. A, Second Notice Letter, at p.6, 7.) The Court might agree that violations on approximately 70 days over a five year period were ongoing or continuous, but such violations did not occur daily. Moreover, CG&E could not have identified the specific seventy dates on which, or even the specific months during which, the violations allegedly occurred from the other information provided in the Notice Letters without a laundry list of dates being stated.

Accordingly, this Court lacks subject matter jurisdiction over the Clean Air Act claim because Freeman failed to strictly comply with CAA notice requirements in the First Notice Letter.[1] The Court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c). The Motion to Dismiss is granted.

**B.     Motion to Consolidate**

Because the Court grants the Motion to Dismiss, Freeman's motion to consolidate this

---

[1] The Court has not examined and expresses no opinion on the other grounds asserted by CG&E as potential bases for granting the Motion to Dismiss.

action with case no. C-1-05-179 is now moot.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS WITHOUT PREJUDICE** CG&E's Motion to Dismiss the Plaintiff's Complaint (doc. #9) and **DENIES AS MOOT** Freeman's Motion to Consolidate (doc. #14).

IT IS SO ORDERED.


                                                                    ___s/Susan J. Dlott_____
                                                                    Susan J. Dlott
                                                                    United States District Judge